IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-02430

915 LABS, LLC, a Delaware Limited Liability Company,

    Plaintiff,

v.

KEVIN PETERSEN, an individual.

    Defendant.

**PLAINTIFF 915 LABS, LLC'S COMPLAINT AND JURY DEMAND**

Plaintiff 915 Labs, LLC ("915 Labs") files this Complaint against Defendant Kevin Petersen ("Petersen" or "Defendant") and states and alleges as follows:

### I. SUMMARY

1.    This case arises from Petersen's breach of his current Employment Agreement effective January 1, 2016 ("Employment Agreement"), breach of his fiduciary duties to 915 Labs, and misappropriation of 915 Labs' trade secrets, highly proprietary information, and confidential information. Beginning as early as November 2016 – well prior to his April 30, 2017 resignation as Vice President of Business Development – and continuing to present time, Petersen (i) violated the covenants to not compete and maintain confidence contained in his Employment Agreement – both while as an employee of 915 Labs and after he resigned; (ii) did not act in 915 Labs' best interests while he was employed by 915 Labs as the Vice President of Business Development; and (iii) wrongfully acquired, used and disclosed to others 915 Labs' trade secrets, highly proprietary information and confidential information, including, without limitation, product specifications and designs, and customer lists and contact information. Upon information and belief, Petersen first

1

entered into a non-disclosure agreement and subsequently entered into a joint business venture with a German entity (the "German Company"), and shared 915 Labs' trade secrets, highly proprietary information and confidential information with the German Company. Upon information and belief, both Petersen and the German entity intend to, and in fact have, utilized the misappropriated information to their competitive advantage and to 915 Labs' detriment. This lawsuit seeks an order, *inter alia*, ordering (a) Petersen to specifically perform his duties and obligations under the Employment Agreement, including, without limitation, ceasing his joint business venture with the German entity; (b) Petersen to return all of 915 Labs' trade secrets, highly proprietary information, and confidential information in his and the German Company's possession; and (c) all other relief necessary to protect 915 Labs from any further damage caused by Petersen's wrongdoing.

## II.  PARTIES

2. 915 Labs is a Delaware limited liability company with its principal place of business in Centennial, Colorado.

3. Petersen is an individual resident of Washington who may be served at his residence address at 18615 42nd Avenue SE, Bothell, WA 98012, or wherever he may be found.

## III.  JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States. Specifically, 915 Labs brings this suit under the Defend Trade Secrets Act, 18 U.S.C. § 1836. The Court has supplemental jurisdiction over 915 Labs' state law claims under 28 U.S.C. § 1367(a).

5. The Court has personal jurisdiction over Petersen because he agreed in Section 7 of his Employment Agreement to the jurisdiction of the state and federal courts of the State of

Colorado. The Court also has personal jurisdiction over Petersen because he has purposefully availed himself of the benefits and protections of Colorado law by accessing trade secrets, highly proprietary information and confidential information from computers and devices located in Colorado, and by directing tortious conduct towards 915 Labs, a Delaware limited liability company that resides in Colorado.

6. Venue is proper in this District under the exclusive venue provision contained in Section 7 of Petersen's Employment Agreement, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts giving rise to 915 Labs' claims occurred in this district and a substantial part of the 915 Labs' trade secrets, highly proprietary information and confidential information that is the subject of the action is situated in this district.

## IV.   FACTUAL BACKGROUND

7. 915 Labs is a start-up company that provides food processing and packaging technology designed to provide consumers with high quality, natural and additive-free packaged foods. 915 Labs' food processing and packaging technology offers Microwave Assisted Thermal Sterilization (MATS™) and Microwave Assisted Pasteurization System (MAPS™) technologies. Both food processing technologies enable the consumer packaged goods sector to meet growing consumer demand for high-quality, natural and additive-free packaged food, enabling large Consumer Packaged Goods manufacturers to reduce additives, increase shelf stability and improve taste in the food production process.

8. Petersen was the Vice President of Business Development for 915 Labs from approximately August 2014 until April 30, 2017, the effective date of his resignation. Petersen was also a Manager of 915 Labs from approximately August 2014 until April 2016, when Petersen resigned from the Manager position.

9. As a condition of his employment, Petersen signed the Employment Agreement effective January 1, 2016, and which termination was effective on April 30, 2017.

10. The Employment Agreement provides, among other things, a covenant not to compete:

> **4. Restrictive Covenants**
>
> (a) The Executive hereby agrees that the Executive shall not, at any time during the Term and for the two year period after termination of the Term (the "Restricted Period"), directly or indirectly engage in, have any interest in (including, without limitation, through the investment of capital or lending of money or property), or manage, operate or otherwise render any services to, any Person (whether on his own or in association with others, as a principal, director, officer, employee, agent, representative, partner, member, security holder, consultant, advisor, independent contractor, owner, investor, participant or in any other capacity) that engages in (either directly or through any subsidiary or affiliate thereof) any business or activity which competes with any service or product offering that, as of the date of the termination of the Executive's employment, the Company or any Affiliate engages anywhere in the United States or China. Notwithstanding the foregoing, the Executive shall be permitted to acquire a passive stock or equity interest in such a business; provided that such stock or other equity interest acquired is not more than five percent (5%) of the outstanding interest in such business.

11. The Employment Agreement provides, among other things, a covenant to maintain confidentiality:

> **4. Restrictive Covenants**
>
> (d) Except as the Executive reasonably and in good faith determines to be required in the faithful performance of the Executive's duties hereunder or in accordance with Section 4(f), the Executive shall, during the Term and thereafter, maintain in confidence and shall not directly or indirectly, use, disseminate, disclose or publish, for the Executive's benefit or the benefit of any other Person, any confidential or proprietary information or trade secrets of or relating to the Company, including, without limitation, information with respect to the Company's operations, processes, protocols, products, inventions, business practices, finances, principals, vendors, suppliers, customers, potential customers, marketing methods, costs, prices, contractual relationships, regulatory status, compensation paid to employees or other terms of employment ("Proprietary Information"), or deliver to any Person, any document, record, notebook, computer program or similar repository of or containing any such Proprietary Information. The Executive's

obligation to maintain and not use, disseminate, disclose or publish, or use for the Executive's benefit or the benefit of any other Person, any Proprietary Information after the termination of the Executive's employment will continue so long as such Proprietary Information is not, or has not by legitimate means become, generally known and in the public domain (other than by means of the Executive's direct or indirect disclosure of such Proprietary Information) and continues to be maintained as Proprietary Information by the Company. The parties hereby stipulate and agree that as between them, the Proprietary Information identified herein is important, material and affects the successful conduct of the businesses of the Company (and any successor or assignee of the Company).

12. The Employment Agreement provides, among other things, Petersen's agreement to an injunction for breach of the covenants contained in Section 4:

> 5. **Injunctive Relief** The Executive recognizes and acknowledges that a breach of the covenants contained in Section 4 will cause irreparable damage to the Company and its goodwill, the exact amount of which will be difficult or impossible to ascertain, and that the remedies at law for any such breach will be inadequate. Accordingly, the Executive agrees that in the event of a breach of any of the covenants contained in Section 4, in addition to any other remedy which may be available at law or in equity, the Company will be entitled to specific performance and injunctive relief.

13. The Employment Agreement provides, among other things, Petersen's agreement to the applicability of Colorado law and the jurisdiction of the state and federal courts of Colorado:

> 7. **Applicable Law; Consent to Jurisdiction**. This Agreement and all disputes, claims or controversies arising out of or relating to this agreement, or the negotiation, validity or performance of this agreement, or the transactions contemplated by this agreement, shall be governed by and construed in accordance with the laws of the State of Colorado without regard to its rules of conflict of laws. Each of the Parties hereby irrevocably and unconditionally (a) consents to submit itself to the exclusive personal jurisdiction of the federal and state courts sitting in Denver, Colorado in any action or proceeding arising out of or relating to this Agreement or any of the transactions contemplated by this Agreement, (b) agrees that all claims in respect of such action or proceeding shall be heard and determined only in any such court, (c) agrees that it shall not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any such court, and (d) agrees not to bring any action or proceeding arising out of or relating to this Agreement or any of the transactions contemplated by this Agreement in any other court.


14. On or about April 7, 2017, Petersen emailed 915 Labs' CEO indicating that he intended to resign his position of Vice President Business Development. Petersen's resignation became effective on April 30, 2017.

15. Upon information and belief, Petersen began to explore competing with 915 Labs and sharing 915 Labs' Proprietary Information (defined in §4(d) of the Employment Agreement) with third parties as early as November 2016. Specifically, 915 Labs recently discovered under Petersen's account on 915 Labs' Google Drive a copy of a non-disclosure agreement between Petersen and the German Company dated November 22, 2016. Additionally, 915 Labs discovered other documents including, without limitation, a document entitled "[German Company] – Petersen partnership 20161128.docx." 915 Labs also discovered that Petersen has shared, among others, permission to a folder entitled "[German Company] – KP JV" under his account on 915 Labs' Google drive with the CEO of the German Company, both with the CEO's work email address and his personal email address, on or about January 5th, 2017.

16. Upon information and belief, Petersen, under the assumed business name of Modern Advantage Technologies, entered into a Non-Disclosure Agreement with the German Company on February 28, 2017, and thereafter supplied 915 Labs' Proprietary Information to the German Company.

17. Upon information and belief, Petersen met with representatives of the German Company in Seattle, WA on or about the week of March 10, 2017, and at that meeting Petersen discussed 915 Labs' Proprietary Information to the German Company. Upon information and belief, Petersen conducted this meeting in furtherance of his intent to launch a business that would directly compete with 915 Labs.

18.     Upon information and belief, Petersen, at a 915 Labs sales meeting with a Japanese customer on or about March 14th, 2017, pitched a solution involving the German Company alongside and/or instead of a solution offered by 915 Labs. Upon information and belief, Petersen introduced the Germany Company to 915 Labs' Japanese customer in person on or about March 14, 2017.

19.     Upon information and belief, Petersen met with representatives of the German Company in a suburb of Frankfurt, Germany on or about April 11, 2017, and at that meeting Petersen discussed 915 Labs' Proprietary Information to the German Company. Upon information and belief, Petersen conducted this meeting in furtherance of his intent to launch a business that would directly compete with 915 Labs.

20.     Upon information and belief, Petersen met with representatives of the parent corporation of the German Company in Berlin, Germany on or about April 12, 2017, and at that meeting Petersen discussed 915 Labs' Proprietary Information to the German Company. Upon information and belief, Petersen conducted this meeting in furtherance of his intent to launch a business that would directly compete with 915 Labs.

21.     Upon information and belief, Petersen and the German Company finalized the Memorandum of Understanding for their cooperative business venture, which competes directly with 915 Labs, on or about June 21, 2017. Upon information and belief, among other things, the German Company agreed, with collaborative support from Petersen, to design, develop, manufacture and/or sell to Petersen's microwave devices to be used in pasteurization and sterilization systems which would compete with 915 Labs' pasteurization and sterilization systems.

22. Upon information and belief, since as recent as March 29, 2017 to present, the German Company established, managed and controlled an ownCloud drive, which was shared with a number of employees of the Germany Company, including the CEO of the Company, and employees of the parent company and its affiliates.

23. Upon information and belief, the German Company's ownCloud drive contained numerous documents that comprise 915 Labs' Proprietary Information, and many of these documents identify 915 Labs clearly on the document and contain 915 Labs' proprietary notices.

24. Upon information and belief, Petersen and the German Company have used 915 Labs' Proprietary Information to design, develop, manufacture and/or sell microwave devices to be used in pasteurization and sterilization systems that compete with 915 Labs' pasteurization and sterilization systems.

25. All conditions precedent to recovery for the claims asserted herein have occurred, been performed, or been waived.

26. Upon information and belief, Petersen conceived and used the name of his company Modern Advantage Technologies (acronym MAT) to create confusion with 915 Labs' name and trademark MATS.

### V.     CAUSES OF ACTION

#### Count 1:  Misappropriation of Trade Secrets (DTSA)

27. 915 Labs adopts the preceding paragraphs as if fully set forth herein.

28. The Defend Trade Secrets Act codified at Title 18, Section 1836 of the United States Code provides that "[a]n owner of a trade secret that is misappropriated may bring a civil

action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."

29. 915 Labs owns trade secrets in the form of, among other things, its product designs and methodologies, and information related to 915 Labs' customers, prospects, pricing products, margins, profit percentages, credit profiles, preferences, and markets. 915 Labs takes significant measures to keep its trade secrets secret by, among other things, requiring employees to sign confidentiality and non-disclosure agreements, by restricting access to its trade secrets, and by requiring password login to access its trade secrets. 915 Labs' trade secrets are of independent economic value in that they form the core of 915 Labs' business. 915 Labs' trade secrets relate to products that are used in interstate commerce.

30. Petersen has misappropriated 915 Labs' trade secrets by acquiring and using them when Petersen knew they were acquired by improper means, namely breaches and/or inducement of breaches of a duty to maintain secrecy and theft.

31. 915 Labs has suffered and is continuing to suffer actual loss caused by the misappropriation of its trade secrets, and 915 Labs is entitled to recover damages for that loss. 915 Labs is also entitled to recover damages for unjust enrichment caused by the misappropriation of its trade secrets.

32. Petersen's misappropriation was done willfully and maliciously, and 915 Labs seeks exemplary damages from Petersen.

**Count 2:  Misappropriation of Trade Secrets (CUTSA)**

33. 915 Labs adopts the preceding paragraphs as if fully set forth herein.

34. The actions described in the preceding paragraphs above also constitute misappropriation of trade secrets under the Colorado Uniform Trade Secret Act, codified at

sections 7-74-101 through 7-74-11 of the Colorado Revised Statutes. In addition to the relief sought under the DTSA, 915 Labs also seeks exemplary damages for the willful and malicious misappropriation of its trade secrets.

### Count 3: Breach of Contract

35. 915 Labs adopts the preceding paragraphs as if fully set forth herein.

36. The Employment Agreement between 915 Labs and Petersen is a valid and enforceable contract.

37. 915 Labs fully performed its obligations under the Employment Agreement.

38. The actions described above, including, but not limited to Petersen's joint business venture with the German Company, Petersen's misappropriation of trade secrets, and Petersen's improper dissemination, disclosure and use of 915 Labs' Proprietary Information, constitute breaches of the Employment Agreement.

39. Petersen's breaches have caused and are causing 915 Labs consequential and proximate injuries, including but not limited to lost revenue, goodwill, attorneys' fees, costs, and expenses. Petersen is liable to 915 Labs for all such actual, incidental, and consequential damages that 915 Labs may suffer as a result of Petersen's breaches of contract.

40. 915 Labs is entitled to specific performance and temporary, preliminary and permanent injunctive relief pursuant to Section 5 of the Employment Agreement.

### Count 4: Breach of Fiduciary Duty / Duty of Loyalty

41. 915 Labs adopts the preceding paragraphs as if fully set forth herein.

42. Petersen was an officer of 915 Labs and subject to a fiduciary duty and/or duty of loyalty obligation to protect 915 Labs' Proprietary Information and not compete with 915 Labs.

43. Petersen breached this duty by preparing to compete and competing with 915 Labs' prior to April 30, 2017 – the effective date of his resignation.

44. Petersen breached this duty by disclosing 915 Labs' Proprietary Information to third parties, including without limitation, the German Company, prior to April 30, 2017 – the effective date of his resignation.

45. As a result of Petersen's willful and wanton breach of his fiduciary duties and duties of loyalty to 915 Labs, Petersen has proximately caused 915 Labs damages.

## VI. PRAYER

WHEREFORE, 915 Labs respectfully asks this Court to award the relief sought herein against Petersen, individually and jointly and severally, including, but not limited to:

A. A temporary, preliminary and/or permanent order ordering Petersen not disclose, use, and/or otherwise make publicly available for any purpose any documents and information he obtained as a result of his employment with 915 Labs and all documents and information derived therefrom, whether in original, copied, computerized, handwritten, physical, intangible, or any other form;

B. A temporary, preliminary and/or permanent order enjoined Petersen from, directly or indirectly, for himself or on behalf of any business entity in any form whatsoever, soliciting, accepting, and performing, any act that would directly or indirectly engage in, have any interest in, or manage, operate or otherwise render any services to, any Person (whether on his own or in association with others, as a principal, director, officer, employee, agent, representative, partner, member, security holder, consultant, advisor, independent contractor, owner, investor, participant or in any other capacity) that engages in (either directly or through any subsidiary or affiliate thereof) any business or activity which competes with any service or product offering of 915 Labs.

C. A temporary, preliminary and/or permanent order impounding all copies of 915 Labs' trade secrets, highly proprietary information and/or confidential information, including without limitation, 915 Labs' Proprietary Information, that are in the possession, custody, or control of Petersen or, as a result of Petersen's actions, his agents, partners, business associates or customers, including, without limitation, the German Company;

D. A temporary, preliminary and/or permanent order terminating/impounding all Cloud based drives, computers, servers, and storage devices (including, without limitation, flash drives and external hard drives) in Petersen's and/or the German Company's possession, custody, or control that contain and/or access 915 Labs' trade secrets, highly proprietary information and/or confidential information, including, without limitation, 915 Labs' Proprietary Information;

E. A temporary, preliminary and/or permanent injunction restraining Petersen and any employees, agents, subsidiaries, affiliates, and all others acting in concert or participation with him, including, without limitation, the German Company, from: (i) directly or indirectly reproducing, modifying, altering, publishing, displaying, selling, marketing, or otherwise disposing of the 915 Labs' trade secrets, highly proprietary information and/or confidential information, including, without limitation, 915 Labs' Proprietary Information, and requiring the return of all materials that contain 915 Labs' trade secrets, highly proprietary information and/or confidential information, including, without limitation, 915 Labs' Proprietary Information,; (ii) competing with 915 Labs; and (iii) directly or indirectly contacting 915 Labs' customers;

F. A temporary, preliminary and/or permanent injunction requiring the collection and destruction of all copies of 915 Labs' trade secrets, highly proprietary information and/or confidential information, including, without limitation, 915 Labs' Proprietary Information, in the

possession, custody, or control of Petersen, or, as a result of Petersen's actions, his agents, partners, business associates or customers, including, without limitation, the German Company;

G. An accounting of damages through judgment and post-judgment until Petersen is enjoined from further misappropriating and/or breaching activities;

H. 915 Labs' actual, special, and consequential damages;

I. The amount by which Petersen, and/or the German Company have been unjustly enriched as a result of their misappropriation and/or improper use of 915 Labs' trade secrets, highly proprietary information and/or confidential information, including, without limitation, 915 Labs' Proprietary Information;

J. Punitive and exemplary damages;

K. Pre-judgment and post judgment interest at the highest rates allowed by law;

L. Reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(D) and section 7-74-105 of the Colorado Revised Statutes;

M. All costs of court; and

N. All such other and further relief, whether general or special, at law or in equity, to which 915 Labs may be justly entitled.

## JURY DEMAND

915 Labs demands a jury on all issues so triable.

Respectfully submitted,

DATED: October 10, 2017

By: s/ John R. Posthumus
John R. Posthumus
jposthumus@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, Colorado 80202-5141
Telephone: (303) 863-9700
Facsimile: (303) 863-0223
Email: litigation@sheridanross.com

ATTORNEYS FOR PLAINTIFF

Plaintiff 915 Labs, LLC's address:
9200 E Mineral Ave
Centennial, CO 80112