# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Chief Judge Marcia S. Krieger

Civil Action No. 17-cv-02430-MSK-MJW

915 LABS, LLC,

    Plaintiff,

v.

KEVIN PETERSEN,

    Defendant.

## OPINION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND SETTING HEARING ON MOTION FOR PRELIMINARY INJUNCTION

**THIS MATTER** comes before the Court pursuant to the Plaintiff's ("915") Motion for Temporary Restraining Order and Preliminary Injunction **(# 3)**.

According to the Complaint **(# 1)**, 915 is "a start-up company that provides food processing and packaging technology." In 2014, it hired Mr. Petersen as its Vice President of Business Development. In 2016, Mr. Petersen signed an Employment Agreement ("the Agreement") with 915. The Agreement contained two provisions of significance here: (i) that, for two years following the end of Mr. Petersen's employment with 915, he would not work for or provide services to "any business that engages in "any business or activity which competes with any service or product offering" of 915; and (ii) that Mr. Petersen would not use or disclose "any confidential or proprietary information or trade secrets[1] relating to" 915. Mr. Petersen resigned from his employment with 915 on April 30, 2017.

---

[1] The Agreement defined "proprietary information as "information with respect to [915's] operations, processes, protocols, products, inventions, business practices, finances, principals,

915 alleges that it has discovered evidence that, beginning in November 2016, Mr. Petersen was having discussions with a "German company,"[2] and that on February 28, 2017, Mr. Petersen entered into a "non-Disclosure Agreement" with that company. 915 alleges that, on certain dates in 2017, Mr. Petersen had meetings with the German company to formalize an arrangement by which Mr. Petersen would form an entity that would assist the German company with designing and developing products to compete with 915's products. In addition, 915 alleges that on at least one occasion in 2017, Mr. Petersen invited a "Japanese customer" -- presumably of 915 – to meet with the German company, so that the German company could solicit the customer to purchase products from it, rather than from 915. Notably, although the Complaint repeatedly alleges that Mr. Petersen disclosed 915's "Proprietary Information" at many of these meetings, 915 asserts that only conclusorily; at no time does 915 identify, with any specificity, the particular nature of the 915 information that Mr. Petersen is accused of disclosing.

Based on these allegations, 915 asserts four claims against Mr. Petersen: (i) misappropriation of trade secrets in violation of 18 U.S.C. § 1836; (ii) misappropriation of trade secrets in violation of C.R.S. § 7-74-101 *et seq.*; (iii) breach of contract under an unspecified jurisdiction's common law, and (iv) breach of fiduciary duty/duty of loyalty under an unspecified jurisdiction's common law.

Simultaneously with the commencement of this action, 915 filed the instant Motion for Temporary Restraining Order and Preliminary Injunction **(# 3)**. As reflected in the proposed order submitted with that filing, 915 requests that the Court impose an injunction against Mr.

---

vendors, suppliers, customers, potential customers, marketing methods, costs, prices, contractual relationships, regulatory status, compensation paid to employees or other terms of employment."

[2]   915's filings appear to purposefully refuse to identify the "German company" by name.

Petersen that: (i) prohibits him from disclosing or using "any documents and information[3] he obtained as a result of his employment" with 915; (ii) prevents him from directly or indirectly soliciting work or performing services that compete with those performed by 915; (iii) requires him – and "his agents, partners, business associates or customers, including . . . the German company" -- to produce "all copies of [915's] trade secrets, highly proprietary information, and/or confidential information" to a "third party electronic discovery firm which shall be mutually agreed to by the parties"; (iv) requires those same persons and entities to produce "All Cloud based drives, computers, services, [and] storage devices" that contain 915's trade secrets or confidential information to the third party firm; and (v) prohibits those same persons and entities from displaying or transmitting 915's trade secrets or proprietary information, from competing with 915, and from contacting 915's customers.

915's motion is supported by two affidavits. One is by Michael De Caro **(# 5)**, who is identified only as the Managing Director of DeCaro Holdings, LLC. Mr. DeCaro relates that: (i) in December 2016, he had discussions with Mr. Petersen about forming a partnership to market microwave pasteurization; (ii) in January 2017, he witnessed Mr. Petersen give a presentation at a seminar that "was not [915] specific, but rather a generic overview of the technology"; (iii) that he attended a March 2017 meeting with Mr. Petersen and representatives of the German company in which Mr. Peterson "disclosed [915's] proprietary information to the German company"; (iv) that he attended a second meeting with Mr. Petersen and representatives of the German company in which Mr. Petersen "actively promoted the new business concept and technology to prospective companies"; (v) attended two more meetings in April 2017 in which Mr. Petersen "discussed [915's] proprietary information" with representatives of the German

---

[3] The Court notes that this provision encompasses more than 915's actual proprietary information and trade secrets.

company; (vi) that the German company established a "cloud drive" that provided certain people – including Mr. DeCaro – shared access to various documents, and that Mr. DeCaro observed "[915's] proprietary information" on that drive, a fact that leads Mr. DeCaro to believe that Mr. Petersen shared that information; (vii) that Mr. Petersen and the German company "have used [915's] proprietary information to develop, manufacture, and/or sell microwave devices . . . that compete with" 915's products; and (viii) that Mr. DeCaro made his own copy of the documents on the German company's cloud drive and later shared that information with representatives of 915.

The second affidavit is that of Matthew Raider **(# 6)**, the Chief Operating Officer of 915. Mr. Raider's affidavit largely repeats the allegations in the Complaint. In addition, he picks up the story where Mr. DeCaro's affidavit ends, explaining that in September 2017, Mr. DeCaro informed him that Mr. Petersen was competing with 915 through the German company and that Mr. Petersen had disclosed 915's proprietary information to others, including the German company. Mr. Raider states that he then examined 915's own computers and discovered that in January 2017, Mr. Petersen had "shared. . . permission to a folder . . . under his account on [915's] Google drive with the CERO of the German company." (It is not clear from Mr. Raider' affidavit what the folder contained.) Mr. Raider also states that he "learned" – although he does not indicate how, when, or from whom – that Mr. Petersen had been "working with another individual . . . to approach [915's] customers." Mr. Raider states that he has reviewed the materials that Mr. DeCaro provided him and determined that "many, if not virtually all, of the documents comprise [915's] proprietary information, including machine designs and specifications and business and marketing materials." Mr. Raider states that, by investigating 915's "business records," he discovered that Mr. Petersen had met with the Japanese customer

and pitched a product that competed with 915's, and further that Mr. Petersen "also introduced representatives of the German company to [the] Japanese customer in person on or about March 14, 2017." Mr. Raider states that, in conversations he had with Mr. Petersen after his resignation, Mr. Petersen repeatedly denied competing with 915 and insisted that he was working on "unrelated technology opportunities."

To obtain an *ex parte* temporary restraining order under Rule 65(b), 915 must: (i) demonstrate, by affidavit or verified complaint, that it will suffer immediate and irreparable injury before Mr. Petersen could be heard in opposition to the motion; and (ii) provide a certification from its counsel identifying any efforts that 915 has made to give notice of the motion to the Mr. Petersen and the reasons why such notice should not be required. Fed. R. Civ. P. 65(b)(1)(A), (B). In addition, regardless of whether the Court is considering a temporary restraining order or preliminary injunction, 915 must make a sufficient showing that: (i) it is likely to succeed on the merits of its claims; (ii) that it will suffer irreparable harm if the injunction is not granted; (iii) the balance of equities favors it; and (iv) the requested injunction is not adverse to the public interest. *See Taxsalelists.com, LLC v. Rainer*, 2009 WL 4884273 (D.Colo. Dec. 11, 2009) (unpublished); *Kansas Judicial Watch v. Stout*, 653 F.3d 1230, 1233 n. 2 (10th Cir. 2011).

The Court denies 915's request for an *ex parte* temporary restraining order for several reasons. First, it has not tendered the statement from counsel required by Rule 62(b)(1)(B). Second, neither Mr. DeCaro nor Mr. Raider's affidavits show that 915 will suffer imminent and irreparable harm before Mr. Petersen could be heard in opposition to the motion for preliminary injunction (a period of time that is typically no more than 30 days). Both affidavits recite only events that occurred in the past; neither affidavit describes with any specificity any events that

Mr. Petersen is expected to undertake in the next 30 days. Even if one assumes that Mr. Petersen continues to work with the German company in alleged violation of the Agreement, it is not clear how that work will harm 915 in a way that differs from the harm that 915 has already suffered due to Mr. Petersen's past work with that company. Accordingly, the Court further finds that 915 has not made the showing required by Rule 65(b)(1)(A).

The Court further notes that the proposed injunction that 915 requests is grossly overbroad, requiring non-parties over whom this Court has no jurisdiction – such as the undisclosed German company – to undertake various actions.

For the foregoing reasons, the request for a Temporary Restraining Order is **DENIED**.

Turning to the second part of 915's motion, a request for a preliminary injunction, the Court will address that request at a <u>non-evidentiary</u> hearing on **Wednesday, Nov. 8, 2017** at **9:00 a.m.** At that time, the parties shall be prepared to address: (i) whether there are facts pertinent to 915's motion for preliminary injunction that are in dispute, such that an evidentiary preliminary injunction hearing is necessary, and (ii) how long such a hearing will require and when the parties will be prepared to proceed with it. To ensure that the Court is sufficiently advised of the issues in advance of the hearing, the Court directs that 915 effectuate personal service of a copy of this Order[4] upon Mr. Petersen, at or before 5:00 pm local time on October 25, 2017. Mr.

---

[4] 915 represents that it has already personally served Mr. Petersen with a copy of the Summons, Complaint, and Motion for Preliminary Injunction. *See Docket #* 11.

Petersen shall file a response to the Motion for Preliminary Injunction on or before November 3, 2017.

Dated this 19th day of October, 2017.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge